IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Nancy K. Wactor, | ) | |
| | ) | C/A No. 8:11-3167-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| Jackson National Life | ) | |
| Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

_____

This matter is before the Court on a motion for summary judgment filed by Defendant Jackson National Life Insurance Company ("Jackson National"). (ECF No. 30). Plaintiff Nancy K. Wactor ("Wactor") filed a response opposing the motion and Jackson National filed a reply. (ECF Nos. 36 and 40). A hearing was held on the matter on April 19, 2013, and the court took the motion under advisement. For the reasons set forth below, Jackson National's Summary Judgment Motion is granted.

**Background/Procedural History**

Wactor's husband, William R. Wactor, ("Decedent") died on June 12, 2010. For many years prior to his death, he had a life insurance policy issued by Jackson National.[1] Wactor was the sole beneficiary of the life insurance policy and the Personal Representative of Decedent's estate. Pursuant to the terms of this policy, the premium payments were to be paid quarterly. The Decedent made his last quarterly premium

---

[1] Originally the policy provided for benefits in the amount of $400,000, but this was later reduced to $200,000.

payment on October 25, 2009. After the quarterly payment due January 25, 2010, was not paid, Jackson National mailed a grace period notice to Decedent dated February 4, 2010, in which Jackson National informed Decedent that the premium had not been paid, and the policy would end on February 25, 2010, unless the premium was paid. Jackson National sent a lapse notice dated February 25, 2010, in which it informed Decedent that the premium still had not been paid, but if the premium was paid by March 26, 2010, the policy would automatically be reinstated without any additional requirements. Further, the letter stated that if the premium was not received by March 26th, the Decedent would have to pay additional unpaid premiums plus interest, and complete the enclosed reinstatement application and obtain approval from Jackson National for reinstatement.

In early 2010, the Decedent was diagnosed with mild dementia and subsequently he developed other health issues which ultimately resulted in his hospitalization and death. On June 11, 2010, the day before Decedent died, Wactor called Jackson National and told the operator that Decedent had developed Parkinson's disease and inquired if Decedent had made the appropriate payments on the life insurance policy. Jackson National informed her that the life insurance policy was no longer in force and the last payment had been received on October 25, 2009. Wactor inquired as to whether she could pay any missed premium payments. Jackson National told Wactor the owner of the policy, the Decedent, would have to contact them for instructions on how to reinstate the policy and what amount would be required to do so. Wactor told Jackson National that Decedent was in the hospital with a broken foot and she did not know that he would be able to contact Jackson National. After determining that Wactor did not have a financial power of attorney, Jackson National suggested that the owner

of the policy could authorize Wactor to receive the information needed to reinstate the policy.  Wactor stated that Decedent maybe could do that at some point soon, but not currently, and the phone call ended.  At her deposition, Wactor testified that when she called Jackson National she "pretty much knew [Decedent] wasn't going to make it." Decedent died the following day and on June 15, 2010, Decedent's daughter, Lisa Gunter, contacted Jackson National to make a claim on the life insurance policy.  She was informed the policy had lapsed. Gunter then sent a letter to Jackson National explaining that her father had suffered from dementia prior to his death and this resulted in his missing the premium payments. Gunter included three letters from Decedent's health care providers.

On June 16th, Jackson National sent Wactor a letter informing her that the policy had lapsed on February 25, 2010, and that no benefits were payable to her as the beneficiary. Thereafter, Wactor brought this action alleging a breach of contract, equitable estoppel, unjust enrichment, bad faith, and breach of duty of good faith and fair dealing. (Compl. ¶¶ 19-41).

## Discussion

In her memorandum opposing Jackson National's Summary Judgment Motion, Wactor contends that there are questions of fact regarding: 1) whether there was adequate notice of cancellation; 2) whether Jackson National acted in bad faith; 3) whether Jackson National should be estopped from cancelling the policy; and 4) whether Jackson National acted in good faith.  The court addresses each of these below.

### A. Notice

The parties to an insurance contract may include in the policy a provision

regarding the cancellation of the policy, and notice of cancellation must be in accordance with such a policy provision, or an applicable statute. Here, it is undisputed that there is no notice provision in the life insurance policy and Wactor has not set forth an applicable statute requiring notice.

Nonetheless, Wactor contends a question of fact exists as to the cancellation notice Jackson National provided and whether Decedent ever received the notice. (Pl.'s Mem. Opp. Summ. J. Mot. at 14). Specifically, she argues that while there is some evidence that indicates that Jackson National sent notices by regular mail, there is no evidence that Decedent or Wactor ever received either the grace period notice or cancellation notice. *Id.* at 16. Wactor notes that ambiguities must be resolved in favor of the insured. *Id*. at 15. She then quotes *Edens v. South Carolina Farm Bureau Mut. Ins*, 208 S.E.2d 670 (S.C. 1983), and argues that *Edens* restricts the insurer's ability to cancel by requiring actual receipt of the written cancellation as a condition precedent to cancellation. *Id.*[2]

However, *Edens* is clearly distinguishable from this case. First, in *Edens*, the court found the policy provision regarding cancellation to be ambiguous. Specifically, the

---

[2] Wactor requests that the court give significant consideration to the opinion of Gerald M. Finkel as an expert in insurance coverage and bad faith practices. (Pl.'s Mem. Opp. Summ. J. Mot. at 12). Finkel offers his opinion as to the applicability of *Edens* and whether Jackson National acted in bad faith. As a general proposition, expert witnesses are "precluded from opining on the law governing the case." *Long v. Blair*, No. 2:09–349, 2010 WL 1930219, at *2 (S.D.W.Va. May 12, 2010) (*citing Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 366 (4th Cir. 1986) (affirming the exclusion of testimony by an expert witness which included legal conclusions)). In fact, expert evidence as to legal conclusions is not only inadmissible, it is not "'evidence' at all." *Nutrition 21 v. United States*, 930 F.2d 867, 871 n. 2 (Fed.Cir. 1991). The court concludes expert testimony on the applicability of *Edens* and whether Jackson National acted in bad faith are legal conclusions. Accordingly, the court will disregard this expert opinion evidence to the extent it merely constitutes legal conclusions.

court held that the homeowner's insurance policy provision that the insurance company could cancel "by giving to the insured a five days' written notice of cancellation" was ambiguous as to the method of giving notice. *Id*. at 671. The insurance company sent the notice of cancellation by regular mail and the insured denied receiving the notice. *Id*. The court noted that "[w]here a cancellation clause provides that the insurer may cancel by mailing the notice to the insured's address or where it contains substantially similar language, the mere mailing is sufficient to effect cancellation. *Id.* (citation omitted). However, the court held that the term "giving written notice" was distinguishable from a provision that the notice be mailed and meant that the insured must have personally received the notice. *Id*. Here, the policy does not contain *any* cancellation provision which could be construed as ambiguous. *Edens*, which dealt solely with the sufficiency of the notice required by an ambiguous notice provision, is simply inapplicable.

The court also notes that Wactor contends that Jackson National misstated the facts when it asserted that the presumption of mailing is unrebutted and undisputed. (Pl.'s Mem. Opp. Summ. J. Mot. at 15). She contends that Jackson National waived or forfeited its right to cancel by providing grace periods and lapse notices in the past on approximately 22 occasions. *Id*. at 15-16. Further, she argues that such conduct in the past strongly indicates that the Decedent did not know this time that the policy was in danger of cancellation and she also notes that neither she nor her daughter could find the notices among the Decedent's effects. *Id*. Finally, Wactor contends that the only evidence that any notices were sent was Jackson National's copies of the notices and a history log entry. *Id*. at 16.

First, Jackson National's grant of a grace period to Decedent in the past does not mean it forfeited its right to cancel the life insurance policy for non-payment of future

5

premiums. Wactor contends that in the past Jackson National accepted late payments 22 times from the Decedent over the 19-year period of the policy. However, it is undisputed that on those occasions, the Decedent paid the late premiums during the grace period. Jackson National has never allowed Decedent to pay premiums after the grace period has lapsed. Jackson National did nothing that would have created a reasonable expectation of insurance coverage past the expiration of the grace periods.[3] Jackson National's prior conduct of accepting late premiums during a grace period cannot in any way be construed as a waiver or forfeiture by Jackson National from cancelling the policy for non-payment of premiums after a subsequent grace period has lapsed.

The remaining arguments go to the issue of whether the Decedent received the notices and do not dispute that Jackson National mailed the notices. Wactor has not specifically challenged Jackson National's proof of mailing. The undisputed evidence is that Jackson National mailed the notices. Furthermore, as there was no provision in the policy requiring any notice, there is no provision to find ambiguous and construe as the court did in *Edens*. As discussed above, *Edens* is factually distinguishable from the present case and simply inapplicable. Finally, there are no statutory requirements in South Carolina regarding notice prior to the cancellation of a life insurance policy.[4] Based on the foregoing, the court finds that here is not a genuine issue of material fact as to the grace and cancellations notice sent by Jackson National.

---

[3] One payment was made during an extended grace period which Jackson National had granted to Decedent, but it is undisputed it was paid within a grace period.

[4] For example, S.C. Code Ann. § 38-75-710 requires notice of cancellation for a homeowner's insurance policy. However, there is no statutory requirement for cancellation of a life insurance policy.

6

B. **Bad Faith**

Under South Carolina law, the elements of an action for bad faith under an insurance contract include:

> (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396–97 (S.C. 1992). "An insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Dowling v. Home Buyers Warranty Corp.*, 400 S.E.2d 143, 144 (S.C.1991). "[A]n insurer acts in bad faith when there is no reasonable basis to support the insurer's decision [for contesting a claim]." *Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E.2d 455, 462 (S.C. 2004). However, "[g]enerally, if there is a reasonable ground for contesting a claim, the denial of the claim does not constitute bad faith." *Hansen ex. rel. Hansen v. United Services Auto. Ass'n*, 565 S.E.2d 114, 119 (S.C. Ct. App. 2002) (*citing Cock-N-Bull Steak House v. Generali Ins. Co.*, 466 S.E.2d 727, 730 (S.C. 1996).

Wactor contends there are questions of fact regarding whether the policy was effectively cancelled. (Pl.'s Mem. Opp. Summ. J. Mot. at 17). Wactor contends Jackson National knew when it denied the claim that there was a question as to the Decedent's knowledge of the policy lapse. *Id*. Specifically, Wactor contends that Jackson National's initial response to Lisa Gunter's letter and the family's inquiries was a computer generated letter from Jackson National Vice-President Charles F. Field dated June 16, 2010, denying coverage without conducting any investigation into the Decedent's

7

cognitive abilities. *Id*. at 18-19.[5] Subsequently, Customer Service Representative Kevin J. Schweda of Jackson National merely confirmed a lapse for non-payment occurred before Decedent's death and determined that notices were mailed. Wactor contends he did not consider that Wactor had telephoned Jackson National on June 11, 2010, the information about Decedent's dementia and cognitive loss, or the acceptance of late payments 22 times by Jackson National during the life of the policy. Further, she contends that no supervisory Jackson National employee performed any further review.

There is nothing in the record to suggest that Jackson National acted in an unreasonable manner in denying coverage. Wactor does not dispute that the premiums were not paid. Based upon the non-payment of the premiums and the lapse of the policy, Jackson National had reasonable grounds for denying this claim. The Court finds, based upon the facts in the record, there is no genuine issue of material fact regarding whether Jackson National had a reasonable ground for denying the claim.

**C. Estoppel**

Wactor argues that Jackson National should be estopped from cancelling the Decedent's life insurance policy because Jackson National refused to provide Wactor "all the meaningful information regarding the status of the Policy other than their position that the Policy had lapsed due to non-payment." (Pl.'s Mem. Opp. Summ. J. Mot. at 20). Jackson National contends its privacy policy is required by law and it did nothing that would estop it from cancelling the policy.

> The essence of equitable estoppel is that the party entitled to invoke the principle was misled to his injury. The essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in

---

[5]Wactor notes that Field never actually reviewed the file or saw the letter until right before his deposition. (Pl.'s Mem. Opp. Summ. J. Mot. at 7-8).

> question; (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially.

*Koren v. Nat'l Home Life Assurance Co.*, 288 S.E.2d 392, 394 (S.C. 1982) (internal citation omitted).

In particular, Wactor contends that Jackson National cited its privacy policy as a reason to deny providing Wactor with the information she needed to resolve the lapse and Jackson National would not have provided that information, even if Wactor had called prior to the grace period lapsing. (*Id*. at 21). Jackson National's privacy policy includes the following provision:

> To the extent permitted by law, we may disclose to either affiliated or nonaffiliated third parties all of the non-public personal financial information that we collect about our customers, as described above.

Wactor contends that the privacy policy is relevant here because she contacted Jackson National on June 11, 2010, asking to be informed of the amount of the late payments, so that she could pay immediately, but was refused such information, on the basis of the privacy policy. (Pl.'s Mem. Opp. Summ. J. Mot. at 20-21). Further she contends that Jackson National admits that had she inquired about the policy during the grace period, she would have been given no information. *Id*.

Wactor argues Jackson National arbitrarily can choose "to deny information to an insured's wife who is also the beneficiary, but still arbitrarily give 'all of the non-public personal information that we collect about our customers' to 'non-affiliated third parties,' for whom there are no guidelines or definitions." *Id*. at 10. She contends that when the insured suffers from dementia, Jackson National's privacy policy eliminates the ability of the policyholder or beneficiary to make effective use of the grace period or

9

reinstatement provision. *Id*. at 9.

There is no evidence that Wactor was harmed by her reliance upon any alleged misrepresentations made by Jackson National. Wactor's argument that Jackson National's privacy policy eliminates the insured's ability to reinstate a lapsed policy does not create a question of fact as to the estoppel claim. During Wactor's phone call to Jackson National, Jackson National offered two ways by which Wactor could act on behalf of the Decedent: Wactor could obtain a power of attorney in order to manage Decedent's affairs or Decedent could contact Jackson National and authorize Wactor to receive information regarding the policy. Wactor interposes several hypothetical or theoretical questions which appear to be an attempt to create questions of fact to defeat summary judgment. However, there is simply no evidence of any material misrepresentations by Jackson National or detrimental reliance by Wactor. Accordingly, the court finds that there is no genuine issue of material fact as to the estoppel claim.

### D. Good Faith and Fair Dealing

Wactor contends Jackson National breached its implied covenant of good faith and fair dealing under South Carolina insurance law by failing to provide proper notice of cancellation, properly investigate the claim, fairly administer its own procedures, and adopt and implement reasonable standards for the prompt investigation and settlement of claims. (Pl.'s Mem. Opp. Summ. J. Mot. at 21).

South Carolina courts have held that "the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is processed." *Mixson, Inc. v. Am. Loyalty Ins. Co.*, 562 S.E.2d 659, 662 (S.C. Ct. App. 2002) (*citing Tadlock Painting Co. v. Md. Cas. Co.*, 473 S.E.2d 52, 53 (S.C. 1996)). The South Carolina Supreme Court has further explained that "if an insured can

demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action."  *Tadlock*, 473 S.E.2d at 53 (*quoting Nichols v. State Farm Mut. Auto. Ins. Co.*, 306 S.E.2d 616, 619 (S.C. 1983)).

However, the crux of a bad faith claim is still whether there is a reasonable ground for the insurer's actions.  *See Crossley*, 415 S.E.2d at 397; *see also Helena Chem. Co. v. Allianz Underwriters Ins. Co.*, 594 S.E.2d 455, 462 (2004) ("Under South Carolina law, an insurer acts in bad faith when there is no reasonable basis to support the insurer's decision.").  There is nothing in the record to suggest that Jackson National acted in an unreasonable manner in denying coverage or its handling of this claim.  It is undisputed the premiums were not paid and the policy had lapsed for nonpayment of the premiums.  Jackson National had a reasonable ground for its actions.  Accordingly, no rational trier of fact could find that Jackson National acted unreasonably in its handling of this claim. *See Monahan v. Cnty. of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir.1996).

## Conclusion

For the foregoing reasons, Defendant Jackson National's Motion for Summary Judgment (ECF No. 30) is **GRANTED** and this action is dismissed with prejudice.

**IT IS SO ORDERED**.

                                              s/Timothy M. Cain
                                              United States District Judge

Greenville, South Carolina
July 10, 2013